UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   4:24-cr-00222 SEP |
| | ) | |
| | ) | |
| DORIANN MORGAN, | ) | |
| BARBARA JACKSON, AND | ) | |
| THALISA WALTON, | ) | |
| | ) | |
| Defendants. | ) | |

## INFORMATION

The United States Attorney charges that:

## The Defendants

1.      At all times relevant to this Information, defendant **Doriann Morgan** was a resident of St. Louis, Missouri, within the Eastern Division of the Eastern District of Missouri.  Defendant Morgan was the owner of A Mother's Touch In-Home Care, LLC ("Mother's Touch"), a business that purportedly provided personal care services, including consumer directed services ("CDS"), for which the company received reimbursements from the Missouri Medicaid program. Mother's Touch was operated in the Eastern District of Missouri. As the owner of Mother's Touch, Defendant Morgan managed the company and submitted Missouri Medicaid claims.

2.      At all times relevant to this Information, defendant **Barbara Jackson** was a resident of St. Louis, Missouri, within the Eastern Division of the Eastern District of Missouri. Defendant Jackson was the business manager for Mother's Touch. As the business manager of Mother's Touch, Defendant Jackson was tasked with recruiting clients and assigning Mother's Touch employees to provide personal care services to clients.

3.    At all times relevant to this Information, defendant **Thalisa Walton** was a resident of St. Louis, Missouri, within the Eastern Division of the Eastern District of Missouri.   Defendant Walton was the office manager for Mother's Touch. As the officer manager of Mother's Touch, Defendant Walton  prepared timesheets, managed the  company's paperwork, and submitted Missouri Medicaid claims.

4.    At all times relevant to this Information, Defendants Morgan, Jackson, and Walton, as individuals or through Mother's Touch, submitted and caused to be submitted reimbursement claims to the Missouri Medicaid program.

## Background

## The Missouri Medicaid Program

5.    The Missouri Medicaid Program is  a health care benefit program within the meaning  of 18 U.S.C. § 24(b) that affects interstate commerce and provides low income citizens of Missouri with medical benefits, items, and services.  Funded by federal and state tax revenue, the Missouri Department of Social Services administers the Missouri Medicaid Program under federal law, with guidance from the United States Department of Health and Human Services.

6.    Under  certain  circumstances,  the  Missouri  Medicaid  program  provides reimbursement for personal care services delivered to beneficiaries in the home setting.  Personal care  services  include  meals,  the  cleaning  and  grooming  of  the  beneficiary,  medication management, and other services. The goal of personal care services is to enable the beneficiary to remain in the home setting with just outpatient treatment instead of long-term inpatient stays in hospitals and nursing homes.

7.    Personal care services reimbursed by the Missouri Medicaid program include consumer directed services ("CDS").  As with all personal care services, the purpose of the CDS

2

program is to allow physically disabled Medicaid recipients, or "consumers," to receive services that enable them to live independently. These consumers must not have a legal limitation of their ability to make decisions, and must be able to hire, train, supervise, and direct their personal care attendants.

8.      CDS services are provided by personal care attendants ("PCAs"), who are selected by the consumer. The services must be provided through eligible vendors, of which Mother's Touch is an example. Although the consumers are officially the "employers" of PCAs, the vendors handle all of the administrative functions, including but not limited to:

    a.  Having a valid Medicaid participation agreement;

    b.  Performing (directly or by contract) payroll and fringe benefit accounting functions for consumers;

    c.  Collecting timesheets from PCAs and certifying their accuracy;

    d.  Transmitting individual payments to PCAs on behalf of the consumer;

    e.  Ensuring all payroll, employment, and other taxes are paid timely; and

    f.  Filing claims for Medicaid reimbursement, either directly or by contract.

9.      When presenting claims to the Missouri Medicaid program, vendors submit a procedure code that describes the service they are providing. The amount of reimbursement is tied to the code and is set to a fee schedule. The claim also must state the dates the PCA purportedly provided the service, and must state the number of "units," which break down into 15-minute intervals. The reimbursement rate increases proportionately based on the number of units. In order to determine the reimbursement by Missouri Medicaid for a given date of service, the rate is multiplied by the number of "units."

3

**A Mother's Touch**

10.     On or about March 24, 2015, Defendant Morgan filed Articles of Incorporation for Mother's Touch with the Missouri Secretary of State's Office.

11.     On or about February 22, 2016, Defendant Morgan submitted an application on behalf of Mother's Touch to enroll in the Missouri Medicaid program as a provider of consumer directed services ("CDS") to Missouri Medicaid recipients.

12.     On or about February 25, 2016, Defendant Morgan submitted an application on behalf of Mother's Touch to enroll in the Missouri Medicaid program as a provider of personal care in-home and respite care services to Missouri Medicaid recipients.

13.     Between January of 2018 and July of 2021, Mother's Touch submitted claims for reimbursement to Missouri Medicaid for personal care and CDS services totaling approximately $4,634,229.93.

<u>**Count 1**</u>
<u>**Conspiracy to Commit Health Care Fraud**</u>
<u>**18 U.S.C. § 1349**</u>

14.      Paragraphs 1 to 13 are incorporated by reference as if fully set out herein.

15.      From in or about January 2018 and continuing to in or about August 2021, in the Eastern District of Missouri and elsewhere, the defendants,

**DORIANN MORGAN, BARBARA JACKSON, AND THALISA WALTON,**

and others known to the United States Attorney, did knowingly and willfully combine, conspire, confederate and agree with each other, to commit an offense against the United States, to wit: to knowingly execute and attempt to execute a scheme and artifice to defraud any health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, or promises,

4

any of the money or property owned by, or under the custody or control of, any health care benefit program, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1349.

## Purpose of the Conspiracy

16.     The purpose of the conspiracy was for the defendant to submit reimbursement claims to Missouri Medicaid that falsely and fraudulently represented that personal care (including CDS) services had been provided when Defendant Morgan, Defendant Jackson, and Defendant Walton knew that such services had not been provided as represented on the claims.

## Manner and Means of the Conspiracy

17.     It was part of the conspiracy that Defendants operated Mother's Touch and used the business as a means of committing criminal offenses described in this Information.

18.     It was further part of the conspiracy that Defendant Morgan, Defendant Jackson, and Defendant Walton, through Mother's Touch, would  submit or cause to be submitted fraudulent claims for reimbursement for personal care (including CDS) services that they knew were not provided. In some instances, the PCA was listed in the Mother's Touch reimbursement claim as V.M., when Defendant Morgan, Defendant Jackson, and Defendant Walton knew that V.M. was working at another job at the time of the service billed by Mother's Touch.

19.     It was further part of the conspiracy that Defendant Morgan, Defendant Jackson, and Defendant Walton, through Mother's Touch, would  submit or cause to be submitted fraudulent claims for reimbursement for personal care (including CDS) services purportedly provided by Defendant Morgan, Defendant Jackson, and Defendant Walton for times during which Defendant Morgan, Defendant Jackson, and Defendant Walton were pictured on social media not performing the personal care services that were billed by Mother's Touch.

5

20.    It was further part of the conspiracy that Defendant Morgan, Defendant Jackson, and Defendant Walton, through Mother's Touch, would  submit or cause to be submitted fraudulent claims for reimbursement for personal care services purportedly provided to patient L.M. while patient L.M. was in the hospital and not receiving personal care services from any Mother's Touch employees.

21.    It was further part of the conspiracy that Defendant Morgan, Defendant Jackson, and Defendant Walton, through Mother's Touch, would submit or cause to be submitted fraudulent claims for reimbursement for personal care services purportedly provided by Defendant Jackson on patient K.N., who did not reside in the Eastern District of Missouri, and who did not receive personal care services from Defendant Jackson.

22.    It was further part of the conspiracy that Defendant Morgan, Defendant Jackson, and Defendant Walton, through Mother's Touch, would submit or cause to be submitted fraudulent claims for reimbursement for personal care services purportedly provided by E.A., for times during which E.A. was working at another job and not performing the personal care services that were billed by Mother's Touch.

23.    It was further part of the conspiracy that Defendant Morgan, Defendant Jackson, and Defendant Walton, through Mother's Touch, submitted reimbursement claims to Missouri Medicaid that falsely and fraudulently represented that personal care (including CDS) services had been provided, for which Mother's Touch received a total amount of reimbursement from Missouri Medicaid of $552,659.32.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.      Pursuant to Title 18, United States Code, Sections 982(a)(7), upon conviction of an offense in violation of Title 18, United States Code, Section 1347 or conspiracy to commit such offense in violation of Title 18, United States Code, Section 1349, as set forth in Count 1, the defendants shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses.  Also subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offenses, which is at least $552,659.32.

2.      If any of the property described above, as a result of any act or omission of the defendants:

       a.      cannot be located upon the exercise of due diligence;
       b.      has been transferred or sold to, or deposited with, a third party;
       c.      has been placed beyond the jurisdiction of the court;
       d.      has been substantially diminished in value; or
       e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).


SAYLER A. FLEMING
United States Attorney


*/s/Derek J. Wiseman*
_____
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney


7

UNITED STATES OF AMERICA      )
EASTERN DIVISION              )
EASTERN DISTRICT OF MISSOURI    )

I, Derek J. Wiseman, Assistant United States Attorney for the Eastern District of Missouri,

being duly sworn, do say that the foregoing information is true as I verily believe.

/s/ Derek J. Wiseman
DEREK J. WISEMAN #67257MO

Subscribed and sworn to before me this __27th__ day of March, 2024.



/s/Nathan M. Graves

NATHAN M. GRAVES
CLERK, U.S. DISTRICT COURT

By: /s/Jason W. Dockery

DEPUTY CLERK